## Crowe, Appellant, *v.* Nanticoke Light Company.

*Negligence—Electric light companies—Presumption.*

In an action against an electric light company to recover damages for the death of plaintiff's husband, it appeared that the deceased on the evening of the accident attempted to turn on an incandescent electric light in his barroom, and immediately received a severe shock which knocked him down.   In falling he carried the glass bulb with him.   He immediately sprang up saying, "What is that?" put the bulb to the socket and received a shock which killed him.   The evidence showed that at another house 200 feet distant, and on the same incandescent circuit, the occupant on the same evening received a severe shock from an incandescent light. It also appeared that at the latter place on the night in question some arc wire was stripped of insulation and had come in contact with the incandescent wire.   There was no evidence, however, that the contact with the naked arc wire would produce any dangerous effect at the house of the deceased.   The evidence also showed that the deceased had been a customer of the defendant company, but that the defendant company prior to the accident had leased and transferred its property and contracts, including the contract of deceased, to another electric light, heat and power company.   *Held*, that it was not error to give binding instructions for the defendant.

Argued April 15, 1903.   Appeal, No. 94, Jan. T., 1903, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1899, No. 769, on verdict for defendant in case of Annie Crowe v. Nanticoke Light Company.   Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Affirmed.

Trespass to recover damages for the death of plaintiff's husband.   Before WHEATON, J.

At the trial it appeared that the deceased, Henry Crowe, became a customer of the defendant company on November 1, 1896, under a contract which was to continue for one year, and unless notice was given to the contrary, from year to year thereafter.   On June 28, 1898, the defendant company leased and transferred its property and contracts to the People's Electric Heat & Power Company of Nanticoke.   On the evening of August 19, 1898, the deceased, while in his barroom, reached up to turn on an incandescent electric light which was suspended from the ceiling.   He immediately received a severe shock which knocked him down.   In falling he carried with him the glass bulb.   He immediately sprang up, saying, " What is that?" and attempted to insert the bulb in the socket, when he received a second shock which killed him.   There was evidence that at the house of one Alexander which was on the same circuit, about 200 feet away from the house of the deceased, a person had received a shock at about the same time.   There was also evidence that at Alexander's house some arc wire was stripped of insulation and had come in contact with the incandescent wire.   There was no evidence, however, that a contact of a naked arc wire with an incandescent wire would produce dangerous results at the house of the deceased.

Plaintiff presented the following points:

1. There is no statutory provision enabling an electric light company to lease to an electric light, heat and power company.   _Answer:_ That may be so; but both these companies were heat, light and power companies, and I believe, under the law in companies of this character, there exists a power to lease. [8]

2. If there is such statutory authority, it is for the jury to say, under all the evidence, whether the Electric Light, Heat and Power Company were actually in possession of and operating the plant under the lease from the Nanticoke Light Company.   _Answer:_ That would be so if there were any evidence to warrant the submission of the matter to you.   But there is no evidence of possession in the Nanticoke Light Company after June 29, 1898, and this accident did not happen until August 19, nearly two months after the People's Company had gone into possession and were running this plant. [9]

4. The plaintiff having shown continuous disturbances for

a considerable time prior to and the same evening of the accident and that the insulation on this circuit was frayed and hung in strips from the wires in places, and further that Cooper, the company's electrician, was at Crowe's place immediately after the accident repairing the circuit, and that E. N. Alexander, whose store lights were on the same circuit, was severely injured by receiving a shock at between eight and nine o'clock of the same evening, and that Cooper aforesaid was present at Alexander's within a few minutes after Alexander was hurt, and that other persons on same circuit received shocks the same night, raises a question which is for the jury to determine, as to whether or not the company had notice of the condition existing and the defective working of the system. *Answer :* That point I decline to affirm, for the reason stated in my general charge, because even if the company did have notice that wires were out of order up at Alexander's, and even if the company was negligent in having the wires out of order up at Alexander's, and even it had not been true that the wrong company had been sued in the lawsuit instead of the right company, then I say it would not make any difference what happened up at Alexander's unless the plaintiff had gone on and showed that what happened up at Alexander's was the cause of Harry Crowe's death. It would not be material, in other words, what happened up at Alexander's unless there was proof that whatever did happen there was what caused Harry Crowe's death. [10]

5. An electric light company furnishing electricity to a contract user for pay, is prima facie liable for injuries to the user if received by him while using the lights in the usual and ordinary manner. *Answer :* I decline to affirm that point if by prima facie is meant that by reason of the happening of the accident a presumption of negligence arises. That may be the law in some states, but I do not believe it to be the law in Pennsylvania. I do not think that the relation which exists between the company which furnishes a man an electric light on a contract and the consumer of that light is of such a character as warrants the assertion that the law as between them would be that if he gets hurt in using that electric light the presumption immediately arises that they have been guilty of negligence. I believe that the law remains with

them as with reference to other parties as a rule, and that where it is alleged that he is hurt by reason of the negligence of the company, it is his duty to prove that he was so hurt. [11]

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (8–11) above instructions, quoting them; (14) in giving binding instructions for defendant.

*Edmund G. Butler*, with him *Harris B. Hamlin*, for appellant.—Where the thing that causes the injury is under the management of the defendant and the accident is such as in the ordinary course of things does not happen, the burden is on the defendant: Shafer v. Lacock, 168 Pa. 497 ; Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Dixey v. Phila., 180 Pa. 401.; Fleming v. Ry. Co., 158 Pa. 130 ; Koelsch v. Phila. Co., 152 Pa. 355 ; Fitzgerald v. Edison Co., 200 Pa. 540.

The plaintiff having proved the contract and performance thereof by both parties thereto, that the electricity which killed her husband was furnished by the defendant company, which company rendered bills under the contract not only for August but also for September and October following, and received payment thereof from the plaintiff, the question was one for the jury under all the evidence.

The franchises and corporate rights of a company and the means vested in them necessary to the existence and maintenance of the object for which they were granted, are incapable of being granted away and transferred by any act of the company itself without express legislative authority: Susquehanna Canal Co. v. Bonham, 9 W. & S. 27 ; Stockton v. C. R. R. of N. J., 17 L. R. A. 97 ; Stewart v. L. V. R. R. Co., 38 N. J. 505 ; Stewart's Appeal, 56 Pa. 413, 422.

A franchise intended in a large measure to be exercised for the public good, any contract which disables the corporation, which undertakes to transfer to others the powers conferred, is void as against public policy: Thomas v. R. R. Co., 101 U. S. 71, 83.

*James L. Morris*, for appellee.—In such an action to show the mere happening of an accident, it is not enough to estab-

lish the alleged negligence of the defendant.   Plaintiff must go further, and must prove by affirmative and direct evidence the particular negligence that caused the accident which is alleged to have caused the injury: Whitaker v. Delaware & Hudson Canal Co., 87 Pa. 34; Goshorn v. Smith, 92 Pa. 435; Huey v. Gahlenbeck, 121 Pa. 238; Reese v. Clark, 146 Pa. 465; Mixter v. Imperial Coal Co., 152 Pa. 395; Reese v. Hershey, 163 Pa. 253; Brunner v. Blaisdell Bros., 170 Pa. 25; Wojciechowski v. Spreckels's Sugar Refining Co., 177 Pa. 57; Snodgrass v. Carnegie Steel Co., 173 Pa. 228; Shafer v. Lacock, 168 Pa. 497; Alexander v. Penna. Water Co., 201 Pa. 252; Price v. Lehigh Valley R. R. Co., 202 Pa. 176.

An electric light company is a manufacturing corporation; therefore it has the right to lease its property: Com. v. Keystone Electric Light, Heat & Power Co., 193 Pa. 245; Potts v. Philadelphia, 195 Pa. 619; Schuylkill Co. v. Citizens' Gas Co., 148 Pa. 162.

There is nothing in the work of manufacturing and supplying electricity which cannot be carried on by the person who seeks to do it, without chartered rights from the state.   Any individual may engage in the business of manufacturing and supplying electric light.   To serve the general public he needs but a municipal franchise or grant of the right to pass over or upon its streets.   Therefore, in this view of the case, it cannot be held that an electric light company is a public corporation: McLeod v. Central Normal School Assn., 152 Pa. 575; Girard Point Storage Co. v. Southwark Foundry Co., 105 Pa. 248; Reynolds v. Reynolds Lumber Co., 169 Pa. 626; Johnson Co. v. Miller, 174 Pa. 605.

A private corporation may lease its property for any purpose consistent with its charter, or may hold under lease premises necessary for its use: Baltimore, etc., Steamboat Co. v. McCutcheon, 13 Pa. 13.

PER CURIAM, May 25, 1903:

The majority of the court are of opinion that the judgment should be affirmed but are not agreed upon the grounds of affirmance.   No reasons therefore will be presented.

Judgment affirmed.